# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GARY R. MILLER and
JEANNE A. MILLER
        **Plaintiffs,**

    v.                                                        Case No. 03-C-0361

MAGNETEK, INC.
        **Defendant.**

## DECISION AND ORDER

Plaintiffs Gary R. Miller ("Gary") and Jeanne A. Miller ("Jeanne") brought this breach of contract action in state court, alleging that defendant MagneTek, Inc. ("MagneTek") breached an agreement to provide them with medical benefits for life. Defendant removed on diversity and federal question grounds and now moves for summary judgment, arguing that no reasonable jury could conclude that its predecessor promised to provide medical benefits to plaintiffs for life.

## I. FACTS

Gary worked for the Louis Allis Corporation ("Louis Allis") as a maintenance worker until February 21, 1970, when a piece of machinery accidentally crushed his arms and hands. As a result of his injuries, he underwent numerous operations and was permanently disabled. He states that after the accident, on several occasions, representatives of Louis Allis promised him that Louis Allis would maintain his medical, dental and prescription drug coverage for life.[1]

---

[1]Plaintiffs state that at the time of the accident their policy covered all of their medical bills with a deductible of $100 per year per participant and a maximum deductible

Louis Allis provided plaintiffs with health insurance until 1984 when it sold its assets to defendant, which established the Louis Allis Division of MagneTek. Defendant continued to provide plaintiffs with coverage.

In 1994, defendant sold the Louis Allis Division to the Louis Allis Company, which sent Gary a letter stating:

> Your workers compensation coverage, as it relates to the February 21, 1970 injury, is the responsibility of Litton Industries, Inc. and Employers Insurance of Wausau.
> . . . .
>
> Your group health coverage is the responsibility of MagneTek, Inc. All questions or concerns that you may have related to your group health coverage should be referred to MagneTek, Inc.
> . . . .

(July 30, 2003 Gary R. Miller Aff. Ex. A.) In February 1995, James Horrell, who handled employee benefits for defendant, wrote a letter to defendant's health plan administrator stating that:

> [Mr. Miller] was injured in an industrial accident in 1970. As part of the terms of the settlement of his claim Litton Industries (and subsequently MagneTek) agreed to provide him with benefits for charges incurred that were not related to his injury.
>
> He was covered by special arrangement with the TPA of Minnesota and by ITT Hartford. He should also be covered by us currently.

(Id. Ex. B.)

In 1998, Gary wrote to defendant regarding his level of coverage as follows:

---

of $200 per year per family, and that it also covered prescription drugs and eighty percent of dental bills.

2

This letter with two attached pages will show that our Deductible is $200.00 per year, and that after our deductible is satisfied our insurance is supposed to pay Medical and Prescription bills at 100%.

My wife hasn't had to pay a deductible because her Medical problems are ongoing year after year.

Our prescriptions have been paid @ 100%, up until the present time my wife received her prescriptions from Wal-Mart Pharmacy in Greenfield, Wisconsin, and they would bill the Insurance Company directly. Being a transplant patient, she requires several medications monthly to preserve her organ. By doing this we don't have to pay out of pocket and wait to be reimbursed, with us both being disabled it is difficult if not impossible for us to pay for this. Also at the time of my injuries, the State Industrial Commission was involved and because the Company was found 100% negligent, as part of our award, my wife and I were given Insurance for Lifetime by the Company.

(Def.'s Second Mot. for Summ. J. Ex. D.)

In 2002, in response to a letter from defendant, Gary replied as follows:

My wife Jeanne and I have received medical and dental benefits from Louis Allis, Litton Industries and MagneTek from the time I was actively employed until the present. In 1970 when I was injured on the job and placed on medical leave, we received medical benefits put in place by the company. The company instructed us that they would be responsible for our medical and dental programs for life. The company was also instructed to pay the maximum penalty/fine at that time of 15% of workers compensation to me in addition to my receiving workers compensation. The company was found to be 100% negligent for not being up to code for safety on the equipment.

(Id. Ex D at 1.)

Gary attached the following note to the letter:

Lifetime medical coverage for myself and my wife Jeanne as agreed to by the company and the WI Industrial Commission resulting from the 2/21/70 accident, the company was found to be 100% negligent.

(Id. at unnumbered 3.)

In 2002, defendant stopped self-insuring and obtained insurance through Blue Cross of California. Soon after, defendant advised plaintiffs that it could no longer provide coverage to them, and plaintiffs commenced the present action.

## II. SUMMARY JUDGMENT STANDARD AND APPLICABLE LAW

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." <u>Id.</u>

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." <u>Bank Leumi Le-Israel, B.M. v. Lee</u>, 928 F.2d 232, 236 (7th Cir. 1991).

The parties agree that Wisconsin law applies to the substantive issues in the case.

4

## III. DISCUSSION

### A. Breach of Contract Claim

In their brief opposing defendant's summary judgment motion, plaintiffs rely on a promissory estoppel rather than breach of contract theory. As a result, I conclude that they have waived their breach of contract claim. Arguments not presented or not supported by pertinent authority are waived. United States v. Holm, 326 F.3d 872, 877 (7th Cir. 2003).

Further, even if plaintiffs had not waived it, their breach of contract claim would fail because plaintiffs present no evidence that they provided consideration for Louis Allis's promise. In order to prevail on a contract claim, plaintiffs must establish the elements of a contract: offer, acceptance and consideration. Briggs v. Miller, 176 Wis. 321, 325 (1922); NBZ, Inc. v. Pilarski, 185 Wis. 2d 827, 837 (Ct. App.1994); see also Gustafson v. Physicians Ins. Co., 223 Wis. 2d 164, 173 (Ct. App.1998) (noting that offer and acceptance exist when the parties mutually express assent, and consideration exists if the parties manifest an intent to be bound to the contract). Consideration refers to a bargained-for exchange. See 2 Joseph M. Perillo & Helen Hadjiynnakis Bender, Corbin on Contracts § 5.1 (1995). In the present case, the only consideration for defendant's alleged promise to maintain plaintiffs' medical benefits that the record even remotely suggests is that plaintiffs forbore from suing defendant for such benefits. However, forbearance from suit does not constitute consideration unless the promisor requests it. Id. § 5.22. ("[i]f there is no request to forbear, there is no basis for finding that a . . . contract of forbearance was created"); see also Restatement (Second) of Contracts § 71 ex. 8 (1981). The record contains no evidence that Louis Allis requested plaintiffs not to sue them for medical

5

benefits. Thus, plaintiffs do not establish that they provided consideration for defendant's alleged promise. For this reason also, plaintiffs' breach of contract claim fails.

**B.     Promissory Estoppel Claim**

Plaintiffs contend that a reasonable jury could find for them on a promissory estoppel theory.[2] In order to prevail on a promissory estoppel claim, a plaintiff must establish: (1) that defendant made a promise that it should reasonably have expected to induce action or forbearance of a definite and substantial character on the part of plaintiffs; (2) that the promise induced such action or forbearance; and (3) injustice can be avoided only by enforcing the promise. Hoffman v. Red Owl Stores, 26 Wis. 2d 683, 696 (1965);

---

[2]Defendant argues that I should dismiss plaintiffs' promissory estoppel claim because plaintiffs did not allege it in their complaint. However, a plaintiff's failure to plead the proper theory does not preclude it from obtaining relief. Pursuant to Fed. R. Civ. P. 8(a)(2), a plaintiff need only plead a short and plain statement of the claim showing that it is entitled to relief. Under the liberal federal pleading rules, a plaintiff is entitled to any relief the court can grant regardless of whether it asks for the proper relief. Janke Const. Co., Inc. v. Vulcan Materials Co., 527 F.2d 772 (7th Cir. 1976) (holding that the district court did not err in submitting the case to the jury under a theory of promissory estoppel even though plaintiff proceeded under contract theories).

Moreover, Fed. R. Civ. P. 15(b) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings," and the rule applies to constructive amendments at the summary judgment stage of proceedings. Walton v. Jennings Cmty. Hosp., Inc., 875 F.2d 1317, 1320 n.3 (7th Cir. 1989) (stating that "although the amendment was effected during consideration of a motion for summary judgment rather than at trial, it is fully consonant with the spirit of Rule 15(b) and existing case law to view the pleadings as constructively amended here"). In determining whether the parties expressly or impliedly consented to a constructive amendment, I ascertain whether the opposing party had a fair opportunity to defend and whether it could have presented additional evidence had it known sooner the substance of the amendment. In re Rivinius, Inc., 977 F.2d 1171, 1175 (7th Cir. 1992) (quotations omitted). In the present case, plaintiffs' promissory estoppel claim arises out of the same occurrence as their breach of contract claim and plaintiffs rely on the same facts. Further, defendant had notice of the claim and addressed it in detail in its reply brief. Thus, plaintiffs' promissory estoppel claim is properly before me.

see also Scott v. Savers Prop. & Cas. Ins. Co., 262 Wis. 2d 127, 155 (2003). While the first two elements, existence of a promise and reliance, are typically questions of fact, the third element, demonstration of sufficient injustice, involves a policy decision by the court. Id.

### 1. Promise of Lifetime Coverage

Thus, I ask first whether the record contains sufficient evidence to enable a reasonable jury to conclude that Louis Allis promised to continue plaintiffs' medical coverage for life. To answer this question, I ask whether Louis Allis's representatives made statements that a reasonable person in Gary's position could have understood to constitute such a promise. 3 Eric Mills Holmes, Corbin on Contracts § 8:12 (stating that Wisconsin law focuses on "the objective effect . . . upon the promisee. The issue . . . is a jury question regarding what a reasonable person in the promisee's position would understand.").

I conclude that there is sufficient evidence in the record to enable a reasonable jury to conclude that Louis Allis promised to provide plaintiffs with medical coverage for life. In his affidavit of March 31, 2003, Gary states that "the company agreed to provide my wife, Jeanne, me and at that time, our minor children, with health and dental insurance coverages, including prescription care coverages, for lifetimes of my wife and me." In his affidavit of July 30, 2003, he states that "Louis Allis agreed . . . that my family and I would continue to receive health and dental benefits . . . to terminate only upon the death of my wife and me." In his affidavit of June 27, 2005, he states that Louis Allis stated that he

would "be placed on medical leave . . . receiving full medical and dental benefits. These were promised to be lifetime benefits."

Notwithstanding Gary's statements, defendant argues that no reasonable jury could find that Louis Allis made such a promise. However, its arguments in support of this position are unpersuasive. First, defendant argues that I should treat Gary's affidavits as shams and disregard the statements in them because they contradict statements that he made in the 1998 and 2002 letters to defendant that I previously quoted. Defendant points out that in the affidavits Gary states that defendant's promise was free-standing, and in the letters he states that the promise was part of a worker's compensation or tort claim settlement. However, I decline to treat Gary's affidavits as shams for two reasons. First, the letters are unsworn. See Leslie v. Grupo ICA, 198 F.3d 1152, 1157-58 (9th Cir. 1999) (stating that the sham affidavit rule does not apply to an affidavit that contradicts or serves to explain prior unsworn letters). Second and more importantly, read in the light most favorable to plaintiffs, the affidavits do not contradict the statements in the letters. The variations in Gary's statements concerning the circumstances surrounding the promises are relatively minor. Gary is not a lawyer, and his statements that the promise was made in the context of a settlement does suggest that defendant did not make the promise or that the promise was of a lower quality. To the extent that Gary's statements could be read as being contradictory, the contradictions are not sufficiently substantial to require me to disregard the affidavits or to grant summary judgment. Rather, they are a matter for cross-examination.

Second, defendant argues that I should disregard Gary's June 27, 2005 affidavit because it contradicts his deposition testimony. Defendant points out that in the affidavit

8

Gary speaks of "lifetime benefits," (June 27, 2005 Gary R. Miller Aff. ¶ 3), but does not use this terminology in his deposition. In his deposition, Gary states that Louis Allis told him that it would "provide my health benefits to go on as they were," that "they were gonna continue our medical, dental and pharmaceutical as it was when I got hurt," that "that was not a concern we had to worry about, that they were gonna provide our medical and dental and pharmaceutical benefits." (Mistrioty Aff. Ex. A at pp. 19 ¶ 19; 24 ¶ 2; 20 ¶ 17.) Once again, however, taking the evidence in the light most favorable to plaintiffs, the variations between Gary's statements in his affidavit and those in his deposition are not great. And, even if the statements could be regarded as contradictory, the contradictions are not substantial enough to require me to disregard the affidavit or to grant summary judgment. Rather, they are appropriately addressed through cross-examination.

A reasonable jury could also conclude that if defendant promised plaintiffs lifetime coverage, defendant should have reasonably foreseen that the promise would have induced forbearance of a definite and substantial character on the part of plaintiffs, Hoffman, 26 Wis. 2d at 696. Plaintiffs state that as a result of defendant's promise, they believed that they had health insurance and therefore made no attempt to obtain benefits from another source. It would surely be reasonable for a jury to infer a causal connection between a promise to provide lifetime health coverage and a family's conclusion that their health insurance needs were provided for and that they had no need to seek alternative means of obtaining health benefits. Thus, a reasonable jury could conclude that defendant promised to provide plaintiffs with medical benefits and that it should have foreseen that plaintiffs would rely on the promise.

9

Defendant also argues that even if a reasonable jury could find that defendant promised to provide health benefits to plaintiffs and should have foreseen that plaintiffs would rely on such promise, no reasonable jury could find that the promised benefits vested in plaintiffs. Defendant further argues that because the benefits did not vest, it was free to terminate them and, accordingly, is entitled to summary judgment. In making this argument, defendant correctly points out that an employer may terminate an employee's health benefits unless such benefits have vested. See Bidlack v. Wheelabrator Corp., 993 F.2d 603, 605 (7th Cir. 1993). However, the question of whether a promise to provide health benefits creates a vested right to such benefits in the promisee depends on what exactly was promised. Generally, if the promise is silent with respect to the duration of the benefits, courts will presume that the benefits have not vested. Murphy v. Keystone Steel & Wire Co., 61 F.3d 560, 565 (7th Cir. 1995). However, if there is an explicit promise of lifetime benefits, such benefits vest in the promisee. See Diehl v. Twin Disc, Inc., 102 F.3d 301, 306 (7th Cir. 1996) (stating that absent a reservation of rights clause in the promise or some other indication that the promise was to expire, "such 'lifetime language' . . . is sufficient to create a triable issue of fact" as to whether the promised benefits vested). As previously indicated, in the present case, plaintiffs present affidavits stating that defendant promised to provide them with lifetime benefits. A reasonable jury could believe plaintiffs on this point and, if it did, could reasonably conclude that the promised benefits had vested.

10

### 2. Reliance

I turn now to the second element of promissory estoppel and ask whether a reasonable jury could conclude that plaintiffs definitely and substantially relied on Louis Allis's alleged promise. As previously indicated, plaintiffs state that as a result of the promise, they made no attempt to obtain insurance coverage elsewhere. On this point, Gary states:

> In the lawsuit that was filed in Milwaukee County Circuit Court against the manufacturer of the machine, health and dental coverages were not requested since they already had been promised and were being received by me at the time of that lawsuit. These benefits continued after the lawsuit was settled.
> Had I known, that over thirty years later, someone would suddenly contend that the company's promise and agreement, supported by its long payment history, was somehow not enforceable, I would not have proceeded as I did in my formal claims against the company and the equipment manufacturer. My wife and I have relied upon the promises and reassurances we received regarding our continuation of our medical and dental insurance. We did not include this claim in the Circuit Court lawsuit filed over thirty years ago since it had already been provided to us. We further did not attempt to assert claims against other companies for this coverage either as a result of the accident, or as a result of their purchasing or selling the former Louis Allis Corporation.
>
> Had I known, that Magnetek, now thirty years later, would attempt to contend that the original promise and agreement and my reliance upon it are not enforceable, I would have taken other steps in 1970 to protect myself and my family to provide for continuation of medical and dental benefits.

(June 29, 2005 Gary R. Miller Aff. ¶¶ 4, 11, 24.) Thus, plaintiffs present sufficient evidence to enable a reasonable jury could conclude that plaintiffs definitely and substantially relied on Louis Allis's promise.

### 3. Whether Injustice Can be Avoided Only by Enforcing the Promise

As previously indicated, in order to prevail on a promissory estoppel claim, plaintiffs must show that enforcement of the promise is necessary to avoid injustice. Answering this question requires the court to make a policy decision and necessarily involves an element of discretion. Hoffman, 26 Wis. 2d at 275. Plaintiffs have presented enough evidence to enable me to conclude that enforcement of defendant's alleged promise may be necessary to avoid injustice. If the fact-finder determines that defendant promised to provide plaintiffs with lifetime benefits, and should have foreseen that plaintiffs would rely on such promise and that plaintiffs did in fact rely on it, it would appear to be unjust not to enforce the promise, particularly if plaintiffs have no other means of obtaining medical care. However, because I have not yet heard all of the facts of the case, my conclusion is provisional, and I will re-examine it at the close of the evidence.

### III. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that defendant's motion for summary judgment (Docket # 54) is **DENIED.**

**IT IS ORDERED** that plaintiffs' motions to file an additional affidavit (Docket #80) is **GRANTED**.

**IT IS ORDERED** that defendant's motion to strike (Docket #84) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiffs' motion for contempt (Docket # 65) is **DENIED WITHOUT PREJUDICE.** The court will address it a telephone conference.

**FINALLY, IT IS ORDERED** that a telephonic status conference will be held on **April 13, 2006 at 10:30 a.m.** The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 31 day of March, 2006.

/s_____
LYNN ADELMAN
District Judge